UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| REBECCA R. BIBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-01819-SEB-MKK |
| | ) | |
| CNHI, LLC d/b/a THE (ANDERSON, IND.) | ) | |
| HERALD BULLETIN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Plaintiff Rebecca Bibbs ("Ms. Bibbs"), who is proceeding *pro se*, has brought this

lawsuit against Defendant CNHI, LLC,[1] alleging that CNHI violated her rights under the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 by

engaging in race and gender discrimination, retaliating against her, and creating a hostile

work environment. CNHI denies these allegations and has moved to dismiss the original

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Following briefing on

the Defendant's Motion to Dismiss the original Complaint, Ms. Bibbs moved to strike

---

[1] Ms. Bibbs has named three individual employees of CNHI—Scott Underwood, Beverly Joyce, and Terrence Alexander—to her Amended Complaint as additional defendants. However, as CNHI points out, "[t]here is no evidence [Ms.] Bibbs has served a Summons and the Amended Complaint on these individuals." Docket No. 31, at 2 n.2. "While they do not have an obligation to respond to the Amended Complaint and CNHI files this motion on its behalf, CNHI notes Bibbs's claims against these individuals would fail for the same reasons as her claims against CNHI (as well as for additional reasons, such as the lack of individual liability under Title VII)." *Id.* Because we ultimately conclude that Ms. Bibbs's Amended Complaint fails to allege any claim against any Defendant, it shall be dismissed in its entirety. However, because Ms. Bibbs will have one more opportunity to try to craft a viable complaint in this cause of action, we remind her that, even as a *pro se* litigant, she has a duty to comply with the Federal Rules of Civil Procedure and this court's Local Rules.

1

CNHI's reply brief. Before these motions could be resolved by the Court, Ms. Bibbs filed an Amended Complaint. CNHI then moved to strike the Amended Complaint for its belatedness, or in the alternative, dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

We must first determine whether we will accept Ms. Bibbs' Amended Complaint as the operative complaint in this litigation before we turn to the parties' other motions. Because we ultimately find that Ms. Bibbs's twelve-day delay in filing her Amended Complaint was neither prejudicial nor committed in bad faith, we shall accept it as the operative complaint and deny Defendant's Motion to Strike the Amended Complaint. This decision renders both Defendant's Motion to Dismiss the original Complaint, and Ms. Bibbs's Motion to Strike Defendant's Reply in support of the original Motion to Dismiss as moot. We proceed now to consider the merits of Defendant's Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), ultimately concluding for the reasons explicated below that it fails to state a claim upon which relief may be granted.

## I.      MOTION TO STRIKE THE AMENDED COMPLAINT

The Court's original deadline by which the parties were permitted to amend their pleadings was February 20, 2023. *See* Docket 9, at 4. However, this deadline was advanced to February 10, 2023, following the initial pretrial conference conducted by the Magistrate Judge. *See* Docket No. 16, at 2. Ms. Bibbs's Amended Complaint was filed on February 22, 2023, which is to say, twelve days late. On March 7, 2023, CNHI filed its

2

Motion to Strike (and/or Dismiss) the Amended Complaint due to its belatedness. Ms. Bibbs maintains that the untimely filing of her Amended Complaint was a good faith mistake on her part because she had lost track of the deadline for filing amended pleadings in the Court's scheduling orders. She believed that she had complied with the Court's orders and deadlines. She seeks to have her delay excused based on her lack of experience and knowledge as a *pro se* plaintiff as well as the fact that the delay was very brief and resulted in no prejudice to Defendant. Thus, she pleads for a measure of mercy by the Court.

"Federal Rule of Civil Procedure 15 provides that, as a general rule, a court 'should freely give leave [to amend] when justice so requires.'" *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)(2)); *see also Young v. United States*, 2018 WL 5808619, at *2 (S.D. Ind. Nov. 5, 2018) (Barker, J.). District courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.'" *Gonzalez-Koeneke*, 791 F.3d at 807 (quoting *Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008)). Here, however, we find none of these circumstances present; there is no indication that Ms. Bibbs's twelve-day delay in filing her Amended Complaint was done out of bad faith, nor has Defendant cited any prejudice to itself from this brief delay. Accordingly, the Court accepts Ms. Bibbs's Amended Complaint as the replacement for her initial Complaint and denies Defendant's Motion to Strike the Amended Complaint. Having accepted Ms. Bibb's Amended

Complaint as the operative complaint, the parties' motions regarding the original Complaint are denied as moot. *See Ind. Trans. Museum, Inc. v. Hoosier Heritage Port Auth.*, 2017 WL 11568798, at *1 (S.D. Ind. Aug. 10, 2017); *Rodgers-Rouzier v. Am. Queen Steamboat Op. Co., LLC*, 525 F.Supp.3d 926, 927 n.1. (S.D. Ind. Mar. 10, 2021) (Barker, J.). This mootness determination applies to both Defendant's Motion to Dismiss the original Complaint and Ms. Bibbs's Motion to Strike Defendant's Reply in support of its original Motion to Dismiss.

## II.     MOTION TO DISMISS THE AMENDED COMPLAINT

We now turn to Defendant's Motion to Dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). The legal standard for Rule 12(b)(6) is familiar: "A Rule 12(b)(6) motion tests 'the legal sufficiency of a complaint,' as measured against the standards of Rule 8(a)." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (quoting *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015)). Rule 8(a) requires that the complaint contain a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "To meet this standard, a plaintiff is not required to include detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), but the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). We also note that *pro se* complaints, such as the one filed before us here, are to be construed liberally, and held "to a less stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenagle*, 792 F.3d 768, 776 (7th Cir. 2015).

## A. FACTUAL BACKGROUND

The following factual background reflects information presented in Ms. Bibbs's Amended Complaint, which facts are deemed true for purposes of ruling on the legal sufficiency of her claims and Defendant's Motion to Dismiss. Ms. Bibbs has attached documents to her Amended Complaint, which we may properly consider as part of the pleadings when ruling on a motion to dismiss. *See NC Capital, LLC v. Metabolomic Tech., Inc.*, 594 F.Supp.3d 1073, 1077 n.2 (C.D. Ill. 2022) (quoting *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2018)). "What makes it appropriate for us to consider the documents that [Ms. Bibbs] has attached to her complaint is that she has not only cited them in the body of her complaint, but she has, to some degree, relied on their contents as support for her claims." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Ms. Bibbs, who is African American and female, began employment as a journalist with the Herald Bulletin on April 14, 2015. Docket No. 29, at 3. The Herald Bulletin is a

newspaper operated by CNHI in general circulation in the Anderson, Indiana area as well as the surrounding county. *Id.* at 4–5. Ms. Bibbs's reporting assignment with the paper required her to provide coverage of events at various school districts within and around Madison County, Indiana, including the Anderson Community Schools ("ACS"). *Id*. Ms. Bibbs also covered issues and activities relating to the African American community and conducted various forms of investigatory journalism. *Id.* at 3. At all times relevant to the events at issue here, the following individuals were employed by CNHI: Scott Underwood, who served as the Editor-in-Chief at the Herald Bulletin as well as occupying other positions with CNHI newspapers; Beverly Joyce, who was a Revenue Specialist for CNHI newspapers in Indiana and Illinois and Publisher of the Herald Bulletin; and Terrance Alexander, who was the Vice President of Human Resources. *Id.* at 4−5. Jim Meyer was Ms. Bibbs's immediate supervisor at the newspaper.

On February 12, 2021, Mr. Underwood directed Mr. Meyer to speak to Ms. Bibbs about her frequent reliance on Mr. Lindsay Brown, an African American community activist, as a news source for her columns. *Id.* at 7. Mr. Meyer conveyed to Ms. Bibbs Mr. Underwood's stated concern that Mr. Brown had become too frequent a source of information and public comment when other reliable sources were also available. *Id.* Mr. Underwood had previously communicated this concern to Ms. Bibbs during the leadup to the November 3, 2020 elections, when Mr. Brown was a candidate for election to the local County Commission. Mr. Underwood had notified Ms. Bibbs that Ms. Joyce was also concerned about the frequency of Mr. Brown's appearances as a source in their

newspaper and that it had been suggested that Mr. Brown might have been volunteering as a news source to advance his own political interests and profile among voters. Docket No. 29-1, at 15. Ms. Bibbs believes that these concerns stemmed from complaints made to CNHI by Diane Airhart, who was a member of the ACS Board of Trustees.

On February 18, 2021, approximately one week after Mr. Underwood and Mr. Meyer had issued their directive to Ms. Bibbs to curtail her utilization of Mr. Brown as a source of comment and information, Ms. Bibbs sent an email to Mr. Meyer, Mr. Underwood and Ms. Joyce, accusing CNHI of engaging in race-based discrimination against her. *Id.* at 15–17. She stated that she believed that the allegation that she was over-utilizing Mr. Brown as a news source was racially motivated towards both her and Mr. Brown because both are African Americans. *Id.* She maintained that any concerns about the sourcing of stories from within the Black community arose not out of CNHI's legitimate journalistic concerns but out of a fear of negative feedback from the public. *Id.* Ms. Bibbs concluded her email to CHNI management, stating: "If I am ever confronted about sourcing in the Black community again, I will consider it harassment and the creation of a hostile work environment and use this document as the basis for an [Equal Employment Opportunity Commission ("EEOC")] complaint." *Id.* at 17.

In support of her contention that CNHI's directive to her was racially motivated, Ms. Bibbs alleges in her Amended Complaint that she used Mr. Brown as a source on only five occasions between December 1, 2020, and February 28, 2021, while Ken de la Bastide—a Senior Reporter for the Herald Bulletin, who is white—used Mr. Brown as a

source one time during this same time period. To Ms. Bibbs's knowledge, Mr. de la Bastide has never been asked to limit his reliance on Mr. Brown as a source. Between December 1, 2020, and February 28, 2021, Ms. Bibbs claims that she referenced Tamie Dixon-Tatum—who is also African American—as a source more often than she relied on Mr. Brown, and in fact relied on thirty-five other members of the African American community as sources. Yet CNHI never mentioned that it had any issues with the use of these sources by Ms. Bibbs, "bolstering [her] belief that [Mr.] Underwood's directive [was] the result of a complaint by a politically motivated member of the public." Docket No. 29, at 8.

Following the transmittal of her email to her three supervisors at the newspaper, Ms. Bibbs received an email from Ms. Airhart accusing Ms. Bibbs of having responded unprofessionally in her previous communications, including a remark Ms. Bibbs made accusing Ms. Airhart of being a "white supremacist." Docket No. 29-1, at 2. Mr. Underwood sent his own email to Ms. Airhart (a copy of which was obtained by Ms. Bibbs) to assure her that CNHI would conduct a review of the appropriateness of Ms. Bibbs's communications. *Id.* However, on February 21, 2021, Ms. Bibbs informed Mr. Underwood that she "felt no need to justify to white employers why [she] thought something was white supremacist [sic] or that [she] confronted someone about it. [She] also let them know that [she] would consider any attempt to discuss it the creation of a hostile work environment." *Id.* at 3.

A series of meetings and phone conversations ensued between Ms. Bibbs and CNHI management. *Id.* at 3−7, 52. On March 4, 2021, in a phone conversation between H.R. Director Alexander and Ms. Bibbs, Alexander commented that she should not have accused Ms. Airhart of being a white supremacist. Docket No. 29, at 9. On another occasion, Ms. Joyce stated to Ms. Bibbs that she and Mr. Underwood wished to discuss Ms. Bibbs's communication style. *Id.* at 10. Ms. Bibbs alleges in her Amended Complaint that these actions by CNHI management constituted "tone policing," which is a common form of discrimination perpetrated against African Americans, especially women. *Id.* Ms. Bibbs contends that in this regard, she was treated differently than Mr. de la Bastide, alleging that "tone policing suddenly is an issue when a white government official [Ms. Airhart] is offended by the word choices of a Black female reporter, but the tone of [Mr. de la Bastide], a white male, was not policed when he loudly and in earshot of other people told a government official not to argue with someone who buys ink by the barrel." *Id.* at 10−11.

On March 8, 2021, Mr. Underwood and Mr. Meyer announced their decision to reassign Ms. Bibbs, moving her off the ACS beat, but having her retain responsibility for coverage of ten other school districts. This shift in duties was to continue until "'this situation' is resolved," a reference apparently to the dispute between her and Ms. Airhart. Docket No. 29-1, at 5. Though she was never reprimanded by anyone at CNHI, Ms. Bibbs avers in her Amended Complaint that her shift in coverage responsibilities occurred in retaliation for her allegations of race-based discrimination, and clearly not in

response to any performance deficiency on her part or her impaired or fractious relationship with ACS. *Id.* at 5; Docket No. 29, at 11. Members of the community allegedly became aware that Ms. Bibbs had been transferred from the ACS beat. Docket No. 29-1, at 6. Thereafter, Ms. Bibbs submitted a formal request to CNHI management, asking to be returned to the ACS beat, but her request was denied. Docket No. 29, at 11.

Ms. Bibbs filed a second claim of discrimination with CNHI on April 8, 2021, to which H.R. Director Alexander responded via email on May 13, 2021, stating that his investigation has disclosed no wrongdoing by CNHI or any of its individual employees. Docket No. 29-1, at 8. Ms. Bibbs "thanked him for letting [her] know and reiterated that because of this outcome, [she] planned to file a complaint with the EEOC by June 30." *Id.* On May 18, 2021, Ms. Joyce informed Ms. Bibbs via email that she was to attend a meeting with CNHI management on May 20, 2021, and that a failure to attend would put her at risk of termination. *Id.* at 9. Ms. Bibbs responded that she "considered their insistence on this meeting harassment and the creation of a hostile work environment and would be filing a formal complaint with the EEOC." *Id.* That evening, Ms. Bibbs filed her complaint with the EEOC, alleging claims of discrimination and retaliation against CNHI.[2] *Id.* Following her filing of the EEOC complaint, Ms. Bibbs met with CNHI

---

[2] Ms. Bibbs did not attach her EEOC Charge to her Amended Complaint, so Defendant attached a copy to their Motion to Dismiss. *See* Docket No. 31-1. A plaintiff's EEOC charge is deemed incorporated into the pleadings, and the Court may consider it without converting a motion to dismiss into a motion for summary judgment. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); *Stafford v. National RR Passenger Corp.*, 2011 WL 2462245 n.1 (S.D. Ind. June 17, 2011) ("the EEOC charge is … central to [Plaintiff's] claims. Accordingly, the Court will consider this document without converting [Defendant's] motion into a motion for summary judgment."). Here, the text of the EEOC charge reveals that Ms. Brown raised claims only for

management as planned, during which session Ms. Bibbs stated that "this was the meeting they had insisted on [having under] threat of [Ms. Bibbs's] termination," and that she had to participate in this meeting "in violation of [her] civil rights." *Id.* CNHI management did not issue any form of reprimand to Ms. Bibbs during this meeting. *Id.*

Ms. Bibbs received her Notice of Right to Sue from the EEOC on June 15, 2022, and timely filed this lawsuit three months thereafter, on September 15, 2022. Ms. Bibb's employment with the Herald Bulletin ended on October 28, 2022. "Between the emotional challenges of working in that environment and an increase in personal responsibilities," Ms. Bibbs explained, "it was no longer sustainable for [her] to be there." *Id.* at 13. The Amended Complaint does not include any further information as to the circumstances leading up to her departure. In her Amended Complaint, Ms. Bibbs has framed three claims under both Title VII and § 1981: (1) discrimination (based on race and gender, respectively), (2) retaliation, and (3) hostile work environment.

## B. DISCUSSION AND DECISION

Defendant has moved to dismiss the Amended Complaint in its entirety, arguing, among other things, that it fails to allege an adverse employment action, which is a required element of discrimination and retaliation claims. Because we ultimately conclude that Ms. Bibbs has, indeed, failed to sufficiently allege an adverse employment action, we will dismiss her claims for discrimination and retaliation. As for her hostile

---

race and gender discrimination and retaliation—she did not raise a hostile work environment claim.

work environment claim pursuant to Title VII, it, too, shall be dismissed because Ms. Bibbs failed to exhaust her administrative remedies by omitting this claim from her EEOC Charge. As for her hostile work environment claim pursuant to § 1981, we hold that Ms. Bibbs's claim fails to sufficiently state a basis upon which relief may be granted.

### 1.  DISCRIMINATION CLAIMS

"Title VII prohibits employers from discriminating against their employees on the basis of race, color, religion, sex, or national origin." *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (citing 42 U.S.C. § 2000e-2(a)). "To succeed on a Title VII discrimination claim, an employee must [allege] (1) that she is a member of a protected class, (2) that she suffered an adverse employment action, and (3) causation." *Id.* (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018)). "The legal analysis for discrimination claims under Title VII and § 1981 is largely identical." *Id.* (citing *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019)). "Race discrimination claims under Title VII simply require that race be a 'motivating factor in the defendant's challenged employment decision.'" *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, --- U.S. ----, 140 S. Ct. 1009, 1017, 206 L.Ed.2d 356 (2020)). "For a § 1981 claim, however, 'a plaintiff bears the burden of showing that race was a but-for cause of [her] injury.'" *Id.* (quoting *Comcast Corp.*, 140 S. Ct. at 1014).

Here, Ms. Bibbs's assertion that she is an African American woman, sufficiently establishes that she is a member of at least one protected class under Title VII and § 1981. However, her claims falter at the next step, that is, in establishing an adverse

employment action. Ms. Bibbs alleges that she was removed from covering ACS activities and events for the newspaper, which transfer diminished her reputation and standing for journalistic professionalism and that she was subjected to "tone policing" regarding her communications with Ms. Airhart, all due to her race and gender. CNHI contends that Ms. Bibbs's discrimination claim does not survive judicial scrutiny because neither its management's criticisms of Ms. Bibbs's professionalism or their communications nor her ACS reassignment constituted adverse employment actions.

"The Seventh Circuit notes that it would be 'impossible' to create 'a precise list of activities that constitute adverse employment actions ... because of the unique circumstances of individual cases.'" *Hunt v. Kelley Services Inc.*, 2022 WL 4259946, at *6 (S.D. Ind. Sep. 15, 2022) (quoting *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 465–66 (7th Cir. 2002)). "Seventh Circuit courts therefore use a 'flexible, practical approach,' in identifying adverse employment actions.'" *Id.* (quoting *Atanus v. Perry*, 520 F.3d 662, 677 (7th Cir. 2008)) "Nevertheless, an adverse employment action must be 'materially adverse, 'meaning more than a mere inconvenience or *an alteration of job responsibilities*.'" *Id.* (quoting *Hilt-Dyson*, 282 F.3d at 465) (emphasis added). "However, 'not everything that makes an employee unhappy is an actionable adverse action.'" *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 470 (7th Cir. 2018) (quoting *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007)).

"In that vein," the Seventh Circuit has repeatedly held that a role "transfer involving no reduction in pay and no more than a minor change in working conditions will not do."

*Id.* (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

Here, Ms. Bibbs's was not transferred into a different position—she continued to work as

a journalist for the newspaper and covered numerous other schools' affairs and continued

to perform investigative journalism assignments, including within the African American

community. Indeed, as our Court has previously held, "changes in job assignments do not

constitute 'materially adverse employment actions' under Title VII." *Renfroe v. IAC*

*Greencastle, LLC*, 385 F. Supp. 3d 692, 709 (S.D. Ind. 2019) (quoting *Griffin v. Potter*,

356 F.3d 824, 829 (7th Cir. 2004)). Her removal from coverage of ACS "occasioned no

reduction in salary, loss of benefits, nor even a loss of title." *Madlock*, 885 F.3d at 470.

An adverse employment action must be more than "an alteration of job responsibilities."

*Hunt,* 2022 WL 4259946 at *6 (quoting *Hilt-Dyson*, 282 F.3d at 465)). For example, in

*Hunt v. Kelly*, our court considered whether a substitute teacher's exclusion from one

particular school based on the school's request constituted an adverse employment action.

*Id.* We concluded that it was not, given that the plaintiff "was still able accept the same

type of [substitute teaching] assignments … in other districts and charter schools in the

Indianapolis area," and did, in fact, accept "several such assignments both before and

after his exclusion" from one school. *Id.* Applying this same analysis to Ms. Bibbs, it is

clear that she suffered no loss of pay and continued to cover all her non-ACS beats,

including many other schools. *See also Madlock*, 885 F.3d at 470−471. This minor shift

in her assigned job duties was not sufficient to constitute an adverse employment action.

Whether this shift that allegedly damaged Ms. Bibbs's journalistic reputation, CNHI's criticism of her sourcing and communication style, or its removal of her covering ACS constituted an adverse employment action is unavailing as a matter of law. In *Spring v. Sheboygan Area School District*, the Seventh Circuit considered a plaintiff's argument that her employer's transfer of her to be the principal of a different school in the school district was an adverse employment action, in part because the transfer was a "public humiliation" and the "public perceived the transfer as a 'nudge towards retirement.'" 865 F.2d 883, 885−86 (7th Cir. 1989). The Seventh Circuit rejected this argument, holding that "public perceptions were not a term or condition of [the plaintiff's] employment." *Id.* at 886. The Seventh Circuit recently relied on this holding to reject another plaintiff's argument that a transfer was an adverse employment action because the plaintiff's co-workers, and even her manager, "found her transfer humiliating or the equivalent of a demotion." *Madlock*, 885 F.3d at 471. Her co-workers and manager "may have viewed the transfer as a demotion or a humiliation, but their opinions about [plaintiff's] work situation are not a term of [plaintiff's] employment." *Id.* "Whether an action is adverse requires an amount of objectivity," the Seventh Circuit explained, "[o]therwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.* (quoting *Williams*, 85 F.3d at 274).

Our court also relied on *Spring*'s holding in *Hunt v. Kelly*, rejecting an argument by a plaintiff that his exclusion from substitute teaching at a school based on the school's concern with his behavior towards the female children "caused him 'shame and

humiliation,' and implie[d] that he did act inappropriately, thus harming his reputation and 'jeopardiz[ing]' his future." 2022 WL 4259946 at *7. Citing *Spring*, we held that "'public perceptions [are] not a term or condition of ... employment,' so [the plaintiff's] emotional and reputational harm cannot constitute a materially adverse employment action." *Id.* (quoting *Spring*, 865 F.2d at 886). In *Hunt*, we cited another holding from the District of Columbia Circuit that, like here, was considering a plaintiff's claims of reputational harm at the pleadings stage, in which it was determined that the plaintiff had failed to sufficiently plead a Title VII claim because "public humiliation or loss of reputation does not constitute an adverse employment action." *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002). We find this rationale convincing here as well. Ms. Bibbs has failed to sufficiently allege an adverse employment action, such that her discrimination claims under both Title VII and § 1981 necessarily fall short of being claims upon which relief may be granted.

## 2.  RETALIATION CLAIMS

"A retaliation claim arises under Title VII when an employee engages in an activity protected under that statute and, as a result, suffers an adverse employment action." *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1007 (7th Cir. 2018) (quoting *Owens v. Old Wis. Sausage Co.*, 870 F.3d 662, 668 (7th Cir. 2017)). The elements of a retaliation claim under § 1981 are the same. *Abebe v. Health and Hosp. Corp. of Marion Cnty.*, 35 F.4th 601, 607 (7th Cir. 2022) (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)). Because Ms. Bibbs fails to allege a viable adverse employment action, her

retaliation claim does not achieve liftoff. "For purposes of retaliation, an adverse employment action is one that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Despite her allegations that she complained of race and gender discrimination in her email to CNHI management on February 18, 2021, and made verbal complaints during various work-related meetings over the ensuing months, Ms. Bibbs concedes that she was never reprimanded, demoted or fired or paid less salary after expressing her written and verbal complaints. As we have previously explained, her removal from the ACS beat did not constitute an adverse employment action. Indeed, her transfer and CNHI's various responses to her complaints never dissuaded Ms. Bibbs from making and supporting a charge of discrimination, which she repeatedly had informed CNHI she intended to do and did do when she filed her EEOC charge on May 18, 2021. That EEOC filing generated not so much as a comment, never mind a reprimand afterwards by CNHI. Having failed to allege an adverse employment action, Ms. Bibbs's retaliation claims necessarily fail as well as claims upon which relief may be granted.

### 3. HOSTILE WORK ENVIRONMENT CLAIMS

Finally, Ms. Bibbs seeks to recover for the hostile work environment in which she was compelled to work, under both Title VII and § 1981. To bring a successful claim for hostile work environment based on either race or gender, an employee must allege that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her

race or gender; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation;  and (4) there is a basis for employer liability. *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 813 (7th Cir. 2022) (quoting *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016)) "Claims under Title VII and § 1981 are analyzed in the same manner, and therefore case law addressing one type of claim applies to both types." *Id.* (citing *Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 544 (7th Cir. 2011)). However, Title VII and § 1981 have one procedural difference: Title VII requires a plaintiff to bring a hostile work environment claim in (their) EEOC Charge and exhaust (their) administrative remedies, before the plaintiff may file suit. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). Here, Ms. Bibbs never included a hostile work environment claim in her EEOC charge, rendering it procedurally barred at this point.

As for her hostile work environment claim pursuant to § 1981, CNHI contends that she has failed to allege anything rising to the level of a hostile work environment. "Deciding whether a work environment is hostile requires consideration of factors like the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Boss*, 816 F.3d at 920 (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)). "Although a connection between the harassment and the plaintiff's protected class need not be explicit, 'there must be some connection, for not every perceived unfairness in the workplace may

be ascribed to discriminatory motivation merely because the complaining employee belongs to a [protected class]." *Paschall*, 28 F.4th at 814 (quoting *Cole*, 838 F.3d at 896).

Ms. Bibbs has provided nothing beyond bare assertions of a hostile work environment without including any legally actionable harassment. She repeatedly invokes the words "hostile work environment" but fails to specify what form the unwelcome harassment took, how it was based on her race or sex, or the extent to which it was severe or pervasive. By generally characterizing her employer's actions as "harassment"— including such things as the requirement that she attend an HR meeting after she had reported discrimination, her removal from covering the ACS beat, scheduling a meeting to discuss her communication style after she accused an ACS Board Member of being a "white supremacist," or challenging her sourcing decisions—does not make it so. None of these actions are objectively abusive, threatening, or otherwise of the sort that would lead a reasonable person to conclude that it unreasonably interfered with her job performance. *See also Kluge v. Brownsburg Comm. School Corp.*, 432 F. Supp. 3d 823, 849 (S.D. Ind. 2020) (granting motion to dismiss plaintiff's claim because "none of his allegations demonstrate that he was frequently harassed, threatened, or humiliated, or that his work environment became abusive," and the statement that defendant's actions adversely affected his working conditions was conclusory and unsupported by any specific factual allegations); *Boniface v. Westminster Place*, 2019 WL 479995, at *3 (N.D. Ill. Feb. 7, 2019) (dismissing plaintiff's claim because her allegations were vague and the complaint contained "no specific allegations suggesting that any conduct was physically threatening

19

or verbally abusive or how it interfered with her work performance"). Accordingly, we dismiss Ms. Bibbs's hostile work environment claim pursuant to § 1981 for failure to sufficiently state a claim.

## III.    CONCLUSION

Defendant's Motion to Dismiss [Docket No. 11] and Plaintiff's Motion to Strike [Docket No. 26] are **DENIED AS MOOT**. Defendant's Motion to Strike the Amended Complaint [Docket No. 30] is **DENIED**. Defendant's Motion to Dismiss the Amended Complaint [Docket No. 30] is **GRANTED**. Ms. Bibbs's Amended Complaint is **DISMISSED** without prejudice. Ms. Bibbs is allowed one additional opportunity to craft and file an amended complaint in an effort to resolve the deficiencies outlined above, if possible. Any such amended complaint must be filed **WITHIN FORTY DAYS** of the date of this Order; failure to do so will result in the dismissal of this action with prejudice, which means it will be gone for good.

IT IS SO ORDERED.

Date:    6/6/2023

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

REBECCA R. BIBBS
440 N. 12th St.
New Castle, IN 47362

Craig M. Borowski
LITTLER MENDELSON, P.C. (Indianapolis)
cborowski@littler.com

Sarah Alexandra Fox Ruddell
LITTLER MENDELSON, P.C. (Indianapolis)
sfox@littler.com